IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSEPH TIMOTHY LINN,** | ) | **CIVIL ACTION NO.** 2:21-cv-327 |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **ALPINE PACKAGING, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

### I.  PRELIMINARY STATEMENT

By this action, Plaintiff, Joseph Timothy Linn, seeks wage loss, compensatory and punitive damages, costs, and attorneys' fees because Defendant, Alpine Packaging, Inc., failed to accommodate his disability and terminated him because of his disability and/or in retaliation for requesting a reasonable accommodation, in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12112 and 12203.

### II.  JURISDICTION

1. This Court has jurisdiction of this matter by virtue of 28 U.S.C. § 1331, in that this is a civil action wherein the matter in controversy arises under the laws of the United States.

2. Venue is proper in this judicial district under 28 U.S.C. § 1391(b), in that this is a civil action in which jurisdiction is not founded solely on diversity of citizenship, and the acts constituting a substantial part of the events and omissions giving rise to the claims occurred in the Western District of Pennsylvania.

3. On August 24, 2020, Plaintiff filed a Charge of Discrimination with the EEOC against the Defendant, alleging failure to accommodate and disability discrimination with regard to the termination of his employment. Plaintiff's Charge was dual filed with the PHRC. On December 10, 2020, the EEOC issued a Notice of Right to Sue to Plaintiff.[1]

### III.  PARTIES

4. Plaintiff, Joseph Timothy Linn ("Linn"), is an adult who resides at 101 Riverview Drive, White Oak, PA 15131. At the time of the incident complained of in this lawsuit and presently, he was and is a citizen of the Commonwealth of Pennsylvania and the United States of America.

5. Defendant, Alpine Packaging, Inc. ("Alpine"), is a Pennsylvania corporation in the custom label printer industry, with its business headquarters located at 4000 Crooked Run Road, North Versailles, PA 15137.

### IV.  STATEMENT OF CLAIM

6. Linn started working for Alpine Packaging, Inc. on January 2, 2018 as a laborer/shipping enhancer.

7. Within the first six months of Linn's employment with Alpine, he revealed to Alpine's owner, general manager, and quality assurance person, among others at the company, that he suffers from depression and anxiety and PTSD due to trauma that occurred during his

---

[1] Once the administrative requirements have been exhausted, Plaintiff intends to amend this Complaint to include two additional parallel counts under the PHRA.

childhood. Specifically, Linn revealed to Alpine that between the ages of 9-11, he was molested and sexually abused by a family member, which he suppressed until approximately age 23.

8. Because of Linn's anxiety, he often has problems with his stomach in the mornings and as a result, at Alpine he often arrived a few minutes after the 9:00 a.m. starting time.

9. On multiple occasions throughout his employment, Linn asked Alpine for the flexibility to arrive a few minutes late because of his anxiety condition.

10. Representatives of Alpine always answered that it was no problem and no big deal.

11. During the days that Linn arrived late, he typically made up the missed time by coming in early on other days.

12. At the beginning of 2020, Linn asked Alpine for a raise. Chad and Chase Lehigh, the owner's sons, said that they would look into Linn's request but that it shouldn't be a problem.

13. During the first week of February 2020, Chad and Chase told Linn he could have the raise if he met a three-pronged plan of action. One of the prongs was arriving at work every day before 9:00 a.m. for at least two weeks.

14. As the raise issue dragged on, in early February, Linn's anxiety became worse and he began having even more problems physically with his stomach in the mornings and sometimes throughout the day.

15. Around that same time period (early February 2020), Linn also had trouble eating and sleeping and began having panic attacks.

16. As a result, Linn made an appointment for February 24, 2020 to see his primary care doctor and have a psychological evaluation. When Linn informed the GM of his need to see a doctor, the GM rolled his eyes at Linn.

17. On February 24, 2020, Linn's doctor officially diagnosed him with depression and anxiety. This diagnosis confirmed what Linn had told Alpine about this psychological condition previously.

18. At the appointment, the doctor also gave Linn a note that he was to give to Alpine, which said that because of Linn's anxiety, he may be late to work and to please excuse his absence. It was the doctor's idea to provide the note, as she thought that it may help Linn at work.

19. When Linn returned to work from the appointment, he gave the note referred to above to the GM and a representative from HR and formally asked for the reasonable accommodation of being allowed to come in a few minutes late to work on the occasions when his anxiety caused him physical problems.

20. After work on February 24, 2020, Alpine called Linn and told him to take the day off on the 25th and to arrive on the 26th at 9:30 a.m.

21. On February 26, 2020, Linn arrived to work at 9:30 a.m. and was asked to meet with Joe DiNapoli, the GM, and an HR representative who Linn didn't know. DiNapoli said to Linn, "we're terminating you." Linn asked him why, and he responded, "we don't have to provide a reason."

22. After the meeting, unbelievably and for no good reason, Alpine embarrassed and humiliated Linn by having police escort him out of the building, even though he had not even raised his voice.

23.     Essentially, Alpine denied Linn's request for a reasonable accommodation, failed to engage in the interactive process once he officially revealed his disability and requested to be accommodated and terminated him because of his disability and because he made such a request.

24.     During proceedings related to Linn's application for unemployment benefits, Alpine raised for the first time the idea that it terminated Linn's employment because Linn threatened to use a gun to harm himself and other employees of Alpine.

25.     Alpine's contention that Linn said that he had a gun and/or threatened to hurt himself and/or other employees is false. Upon information and belief, Alpine manufactured this idea in an attempt to offer a legitimate business reason for terminating Linn's employment.

26.     Further evidencing that Alpine's now stated reason for terminating Linn never occurred is that Alpine allowed Linn to return to work on February 21, 2020. If Linn truly made these threats, there is no way that Alpine would have allowed Linn to return to work.

27.     Additionally, in its EEOC Position Statement, Alpine raised for the first time that Alpine gave Linn a formal warning on February 21, 2020 with regard to his tardiness issues and his reaction was confrontational, aggressive, loud and threatening toward members of Alpine's management.

28.     On the contrary, Alpine never warned Linn, and the other allegations Alpine raised as set forth in paragraph 27 are false. Linn acted professionally on February 21 and during all other times with Alpine's management and never engaged in threatening, aggressive or confrontational conduct toward members of Alpine's management.

29.     Also, contrary to Alpine's contention that it raised in its EEOC position statement, Linn never told Alpine that his girlfriend was the main cause of his being late. Linn drove his girlfriend to work on only a few occasions and was late getting to work at Alpine only on a few

days as a result. Linn consistently told Alpine the truth, that the main causes for him often being a few minutes late was the problem he had waking up in the mornings and the stomach issues he had, both due to the emotional problems from which he suffered.

30.     As a result of Alpine's aforementioned conduct, Linn has suffered a loss of past and future wages and benefits, substantial mental anguish, and emotional distress.

## V.     CLAIMS FOR RELIEF

### COUNT I – VIOLATION OF ADA – TERMINATION

31.     Plaintiff incorporates by reference the averments contained in all preceding paragraphs as if fully set forth herein.

32.     Defendant has intentionally and willfully engaged in a series of unlawful acts, practices, policies, and/or procedures in discriminating against Plaintiff with respect to compensation, terms, conditions, or privileges of employment in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12112.

33.     Defendant's decision to terminate Plaintiff's employment was induced by its intent to discriminate against Plaintiff on the basis of his disability and/or perceived disability as evidenced by the above-described actions.

34.     Plaintiff has been directly harmed as a result of Defendant's violations as is fully set forth above.

### COUNT II – VIOLATION OF ADA – RETALIATION

35.     Plaintiff incorporates by reference the averments contained in the previous paragraphs as if set forth fully herein.

36. Defendant intentionally retaliated against Plaintiff because of his continued reasonable accommodation requests, in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12203.

37. Defendant's decision to terminate Plaintiff's employment was induced by its intent to retaliate against Plaintiff, as evidenced by, among other things, the timing (only two days) between Linn's formal accommodation request and his termination.

38. Plaintiff has been directly harmed as a result of these violations as is fully set forth above.

## COUNT III – VIOLATION OF ADA – FAILURE TO ACCOMMODATE

39. Plaintiff incorporates by reference the averments contained in the previous paragraphs as if set forth fully herein.

40. Defendant failed to accommodate Plaintiff's disability in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12112.

41. As set forth above, Plaintiff is an individual with a disability because he suffers from an impairment that substantially limits one or more major life activities.

42. Plaintiff informed Defendant of that disability and requested a reasonable accommodation on several occasions.

43. Defendant failed to engage in the interactive process and failed to accommodate Plaintiff's disability, despite the availability of reasonable accommodations for Plaintiff's disability.

44. Plaintiff has been directly harmed as a result of Defendant's violations as is fully set forth above.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Honorable Court will:

(a) Assume jurisdiction herein;

(b) Declare Defendant's conduct to be unlawful and an intentional violation of Plaintiff's rights;

(c) Award Plaintiff wage loss damages, including back pay, front pay, and lost future earnings, damages associated with the increased tax burden of any award, and lost fringe and other benefits of employment, including health, dental, and vision benefits;

(d) Award Plaintiff compensatory and punitive damages;

(e) Award Plaintiff pre-judgment and post-judgment interest;

(f) Award Plaintiff costs and attorneys' fees under all counts; and

(g) Grant such other relief as the Court deems just and appropriate.

Respectfully Submitted,

**JURY TRIAL DEMANDED**

s/ David B. Spear
David B. Spear
PA Id. No. 62133

Minto Law Group, LLC
603 Stanwix Street, Suite 2025
Pittsburgh, PA 15222